M. V. MURPHY, ADMINISTRATRIX, &c. OF HANNAH CARPENTER, DECEASED, RESPONDENT, *v.* D. M. CARPENTER AND D. D. BARNS, AS ADMINISTRATORS, &c., OF L. S. CARPENTER, DECEASED, APPELLANTS.

*Married woman—not liable on a contract unless her separate estate is charged by it—inference that money not legally due from her under such a contract was applied as a payment on a debt due to her—presumption that her separate estate is benefited by the contract.*

The plaintiff's intestate having during her lifetime presented a claim against the defendants as the administrators of her husband's estate, based upon a promissory note for $500, given by him to her, it was, on being disputed by the defendants, referred, in accordance with the statute. On the trial it was shown that after the giving of the note, one Mary Murphy, who was a niece of the wife, and was sick and feeble, was taken into the family under an agreement that she should do as much work as she was able to do, and that the wife, who had a separate estate, should pay to her husband one-half of her board, after deducting therefrom what she should earn.

*Held,* that although the claim for the board of Mary Murphy could not be

enforced against the wife, as she had not charged her separate estate with the payment thereof, yet, as it appeared that no payment of either principal or interest, nor any demand therefor had been made during the husband's lifetime, and as no charge as to such board had been made by him in any of his books or papers, it was to be inferred, after the death of both of the parties, that the board was, by mutual consent, applied upon the note, and that the referee should have treated the amount found to be due therefor, as a payment upon it.

*Semble*, that a married woman should be deemed to have benefited her separate estate by the performance of every contract she makes, and should be able to enforce it, and be liable to have it enforced against her, simply because she had made it the same as if she were unmarried. (Per BARNARD, P. J.)

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee, appointed pursuant to the statute, to hear and determine a disputed claim against the estate of Leonard S. Carpenter, deceased.

The disputed claim was based upon a note of $500, dated October 1, 1872, made by Leonard S. Carpenter, and payable to the order of Hannah Carpenter, his wife, who died since the death of her husband, and after the commencement of this action.

It was proved that the said Hannah Carpenter, at the time the note was given, owned, as her separate property, a mortgage against one Wm. Henderson for $6,000. On September 30, 1872, Henderson, to make a payment on the mortgage, gave his check for $1,200, payable to the order of L. S. Carpenter, or bearer. Leonard S. Carpenter took the check to the bank and drew the money on it. He caused $500 to be placed to his own credit in the bank and received the balance, $700, in money. The note in question was given the following day. The defendants set up several alleged counter-claims, among them one for the board of one Mary Murphy, a niece of Mrs. Carpenter, which was disallowed by the referee. It was not proved or claimed that Hannah Carpenter ever charged her separate estate with the payment of this item. The referee reported in favor of the plaintiff for the amount of the note and interest, after deducting $112 for money advanced by the husband for the wife's benefit, and also an item of $22 for a veil purchased by the administrators for Hannah Carpenter, immediately after her husband's death.

*C. Haines* and *D. M. Carpenter*, for the appellants.

*E. A. Brewster*, for the respondent.

BARNARD, P. J.:

The report of the referee is fairly supported by the evidence in reference to the note in question. It was dated October 1, 1872, and was given by L. S. Carpenter, who is the defendant's intestate, to Hannah Carpenter, his wife, who is the plaintiff's intestate, for $500. It was proven that Hannah Carpenter had separate property, and that on September 30, 1872, L. S. Carpenter received from one Henderson $1,200. $500 of this was deposited to the husband's credit in the bank, and $700 was drawn in cash. The next day this note was given. There was proof given tending to show that the husband had paid some money for the wife, not to a large amount. It is a fair inference that the accounts of the parties were settled when the note was given, especially as the $700 received by the husband was a much larger amount than would pay all his claims against his wife. Besides, there is no proof showing any open account upon the husband's books against his wife, except for a small balance of $24.60, which forms no part of the dispute in this case, but as to which no proof was given to establish it as a claim against the wife.

I think the referee erred in not allowing to defendants against the note the $285, for the board of Mary Murphy. She was Mrs. Carpenter's niece. She was sick and feeble. She went into the family of the intestate of the defendants upon the request of his wife, and upon her promise to pay her husband half her board after deducting what she could earn. One witness states that the contract was for Mrs. Carpenter to pay one-half the board to her husband, and that Mrs. Murphy was to pay the other half by her work for him. There is nothing in the marital relation which, in equity, prevents a wife making a contract like this. This proceeding includes both legal and equitable claims. The husband's claim against the wife was as good, so far as the marital relation affected the question, as that of the wife against the husband. The referee finds that there was no agreement by which the wife bound her

separate estate. The law on this subject is not yet fully settled. A wife is bound when she in terms charges her separate estate. She is bound when the contract is for the benefit of the separate estate, without any reference to her separate estate being made in the contract. Her separate estate is benefited when she, by the contract, creates it. It is benefited when it adds to it, and when, by the contract, she defends and preserves it. The true rule would seem to be that a married woman should be deemed to benefit her separate estate by the performance of every contract she makes. That she should be left free to determine when to make a contract, and that she should be able to enforce it, and be bound to have it enforced against her, simply because she had made it the same as if she was unmarried. Under the cases there being no contract to bind the separate estate, the claim is probably not to be upheld. It seems, however, that it should be upheld as a payment. The contract was made after the note was given; no interest was paid upon the note after its date. There seems to be no charge on the deceased husband's books, or among his papers, referring in any way to this board. There does not seem to have been any demands made by the wife for the interest or principal on the note of her husband in his lifetime; both parties are dead, and there is no better proof than an inference to be drawn from the acts of the parties, which seems to justify the conclusion that the board was, by mutual consent, applied, in fact, upon the note. Such an inference would be just as between the parties.

Judgment modified by deducting $285, with interest thereon from November 20, 1875, and affirming it in other respects, without costs on this appeal.

DYKMAN, J., concurred in the result.

Present—BARNARD, P. J., GILBERT and DYKMAN, JJ.

Judgment modified by deducting $285, with interest from October 20, 1875, and affirmed as to residue, without costs on this appeal.